We will now move to appeal 23-2316, Donnell Wilson v. Neal, and Mr. Miller, we will begin with you. Good morning, your honors, and may it please the court. My name is Zion Miller, and I represent the petitioner, Mr. Donnell Wilson. Donnell is in state custody pursuant to a judgment imposing a 100-year sentence. This judgment has not been reviewed by any state court, and thus de novo review applies. Under de novo review, Donnell's Eighth Amendment claim should be found valid, as he has received an unconstitutional de facto life sentence, because the Indiana courts had no discretion to go below a de facto life sentence, and he is highly likely to die in prison with his current sentence. I would like to quickly summarize my argument on the de novo standard of review. De novo standards apply when a judgment has not been reviewed on the merits by a state court. The Supreme Court said in Burton v. Stewart, quote, the sentence is the judgment. Naturally, custody flows from the judgment. Custody in this case cannot flow from the original judgment imposing a 180-year sentence, because the Indiana Supreme Court found that judgment constitutionally defective. It cannot be held pursuant to an unconstitutional judgment. Furthermore, custody cannot flow from the Indiana Supreme Court's opinion. Of course, custody doesn't flow from appellate opinions. It flows from the judgment authorizing the custody from the trial court. If Donnell's custody flowed from the Indiana Supreme Court opinion, there would be no need for the trial court to have entered the judgment as it did on February 12th. Of which year? February 12th of? Of 2021, Your Honor. Right. And that is the judgment that currently authorizes his custody to today on a 100-year sentence. We attempted to obviously appeal that decision, that judgment, in Indiana state courts. It was dismissed for jurisdiction. As a result, it has not been reviewed on the merits. Mr. Miller, do you agree that if we were to apply the 2254D standard, we would have to affirm? Yes, Your Honor. Okay. There is no clearly established Supreme Court precedent on this point. And I guess what I'm struggling with, given the purposes of the statute to require exhaustion of state remedies, to give state courts respect, the opportunity to address issues, you seem to be saying that we must ignore the Indiana Supreme Court's decision that led to the modification of his sentence in which it directly addressed the constitutional issue you're arguing today. Your Honor, the issue is that federal courts must respect the decision on the merits as it relates to the particular judgment authorizing custody. Well, how do you get that out of the language of the statute? What requires us to ignore, to put on blinders and ignore the Indiana Supreme Court's decision on precisely the same question for this defendant? Your Honor, the answer to that question is in Magwood, the United States Supreme Court decision in Magwood. In Magwood, we had the defendant sentenced to a life sentence. He appealed it, went up through federal habeas proceedings, was granted success there. Well, Magwood addressed the question of whether it was a second or successive petition. Why does that control this question? Well, because the court in Magwood said just because an error was made during the original judgment and then on the second intervening judgment, that error is still new on the intervening judgment. I think it's notable in the context of the fair warning. And he was able to obtain review. Yes, Your Honor. But I guess I'm still struggling with why we should ignore what the Indiana Supreme Court told us. I think the answer is you don't have to ignore it. It certainly persuades authority, but it's not binding because what Magwood said is that 2254, unlike other statutes like 2255, for example, it is explicitly predicated on the judgment itself. And so what the Indiana Supreme Court said in its opinion occurred before the current judgment, authorizing Donnell's custody. The new judgment is unreached. Certainly, they did review a claim on the 180-year sentence. The 2254d is framed in terms of adjudication of a claim, right? Yes, Your Honor. And Mr. Wilson made this claim, and it was adjudicated. On a different judgment. And so the fair warning claim in Magwood, I think, is instructive. In Magwood, the defendant had the opportunity to bring a fair warning claim on his first habeas petition, but didn't. He did bring it on the second habeas petition. And under the standards of habeas, if you fail to bring a claim on your first petition, it should be invalidated. You cannot bring it on a second petition. But the Supreme Court explicitly stated you can bring that claim because 2254, the claims necessarily run with the judgment. If this argument is true, that the fact that it was reviewed on the previous judgment means it cannot be reviewed now, well, that would not make sense with Magwood, given that there's no meaningful difference between failing to bring a claim the first time and thus being able to review it the second time despite the habeas standard saying that is not normally how you could do it if this was the same judgment. So let me ask, in this context, I guess part of what I'm wondering is whether this is all just uniquely specific to Appellate Rule 7B under Indiana law. And once the Indiana Supreme Court made its decision, rejecting the constitutional claim but exercising its appellate power under 7B to reduce the sentence from 180 to 100 years, what purpose would have been served for anybody by requiring the trial court in Indiana or the Indiana Appellate Court or the Indiana Supreme Court, for that matter, to revisit your client's constitutional claim? As a matter of why it's important, I believe there's a meaningful difference in what the Indiana Supreme Court saw between the 180-year sentence and its imposition of the 100-year sentence. The Indiana Supreme Court believed it was not imposing a de facto life sentence on Donnell Wilson when it imposed the 100-year sentence. And because it decided to do this resentencing 7B within the context of the post-conviction proceeding, turning it into a direct appeal, his attorneys were precluded from arguing that a 100-year sentence would still be a de facto life sentence. And so that's the value here, is that we would have had the opportunity to explain to the court, no, a 100-year sentence does not help Donnell at all. He will still die in prison. Was there oral argument before the Indiana Supreme Court at the 7B stage? I do not believe so, Your Honor. There was briefing, consideration by the court, the court issues its decision, but you don't believe oral argument? Not on the 7B issue. My understanding of what occurred is the post-conviction proceeding was arguing both the Eighth Amendment and the Sixth Amendment issue. The usual procedure in Indiana is then a remand to the appellate courts to do a new appeal, and that's where the 7B argument would have occurred under normal circumstances. I don't think anybody anticipated the 7B argument, excuse me, the 7B decision occurring, being done by the Indiana Supreme Court itself. And so to the best of my knowledge, no argument was done on that point as to what the 7B really should be. If the Indiana Supreme Court was not convinced by the constitutional argument regarding 180 years, why should they have changed their mind with respect to 100? There's I think two answers to that. The main one being they did not understand that 100 years was still a life sentence. I think what we see here is on the Eighth Amendment... They didn't see a constitutional problem with 180, right? Correct, Your Honor. Let me rephrase. I don't think that's entirely correct. I think the Indiana Supreme Court saw that it was difficult to draw lines with the fact of life sentences, but recognized there was something wrong with the sentence. They were not happy about the duration, and that's why they went to 7B. They could avoid the thorny line drawing associated with the fact of life sentences while still protecting this individual's rights in their mind by giving him the 100-year sentence. It's also worth noting that even if... Had we had the opportunity to argue, I think we would have made a persuasive point that this is still a de facto life sentence. And again, you look at the language of the Supreme Court's opinion, they explicitly say they think he will have the chance to live outside of prison. But as we explain in our briefing, that's just not the case. This Court's precedent has looked to whether a de facto life sentence means you're highly likely to die in prison. It does appear that Donnell is highly likely to die in prison. We look to the, for example, the Federal Sentencing Guidelines. The Sentencing Guidelines Office has extensive experience with sentences and how prison life affects people. They've determined that a sentence of 470 months is, quote, for all practical purposes, a life sentence. We look to the ACLU of Michigan to see what the average life expectancy of a prisoner is. Who's sentenced as a juvenile, it's 50 years. The earliest Donnell can get out in this case is 66 or 67 years old. And how old is he now? He's currently about 26, Your Honor. He was 16 in 2013 when he committed the crime. So the earliest he can get out, under Indiana's good time credit system, we do not have discretionary parole in Indiana. That is not an option. The earliest he can get out, with good time credit, is 66 or 67. And that is 16 to 17 years past the average life expectancy for a juvenile sentenced to prison. It's well beyond what the Federal Sentencing Commission considers to be, for all practical purposes, a life sentence. And furthermore, on whether or not this is, in effect, a life sentence, we recognize that it can be difficult to line draw. This court doesn't necessarily have to line draw in this case. Because the warden at no point in federal court, or on this judgment whatsoever, have they argued that this is not a life sentence. All they've argued is that it is the product of a discretionary sentencing system, I believe based on 7b. But the Indiana Supreme Court has never, never once, interpreted 7b as allowing them to ignore a statutory mandatory minimum. It's a 45-year mandatory minimum in Indiana for murder with the gang enhancement. It's mandatory that it be doubled, run consecutively. So the mandatory minimum in this case was 90 years. There is no case from the Indiana Supreme Court ever using 7b to go below a mandatory minimum. No opinion ever suggesting that they have that power. And I think it's telling that the state doesn't cite a case that would indicate the Supreme Court has that authority. Barring any- Would you like to reserve the remainder of your time? Yes, Your Honor. Very good. Thank you, Mr. Miller. Mr. Coby, we'll move now to you for argument from the apple leaf. Thank you, Your Honor. May it please the Court. Wilson's petition was filed outside the statute of limitations period. But even if timely filed, he is not entitled to relief. The Indiana Supreme Court decided his Eighth Amendment claims on the merits, and he agrees he cannot show that the state court's decision was an unreasonable application of or contrary to clearly established federal law. I just want to point out a few things. First of all, the briefing was on 7b before the Indiana Supreme Court. Wilson, in his brief, briefed the 7b issue. It was argued, the whole case was argued before the Indiana Supreme Court, and that was part of the argument. And then I would also point out that on rehearing, he again raised the 7b issue in regard to the 100-year sentence. So his suggestion that his attorneys had no chance to argue to the Indiana Supreme Court that the 100-year sentence still violated the Eighth Amendment is wrong, because he raised that issue in his petition for rehearing, which the Indiana Supreme Court denied. Also, I think his new judgment argument proves a little bit too much, because if the trial court's judgment is a new judgment, he did not seek transfer to the Indiana Supreme Court. So any claim that he would have raised in that new appeal is procedurally defaulted, because he did not seek review from the Indiana Supreme Court. So even if he succeeded... Wouldn't that have been kind of silly for him to do, in light of what the Indiana Supreme Court had decided, and then the dismissal of his appeal of that second sentence? Well, I mean, I think that trying to appeal the Supreme Court's judgment was a wrong move. You wouldn't have said it was frivolous, correct, counsel? I think that was a wrong move, because what he should have done is filed a petition for review, as soon as the Indiana Supreme Court decided his claim. And what was the judgment? The judgment was the 100 years. Imposed by? Imposed by the Indiana Supreme Court, and then made the sentencing judgment by the trial court that was to comply with that. So why did that happen? Why did that happen? Well, the trial court had no discretion to do anything other than that. Why did it have to do anything? Because there was a sentencing order out there by the trial court with a different sentence. So for... So there had to be... There had to be a new judgment, correct? Well, I don't think it was a new judgment. I think there had to be a new sentencing order that complied with what the Supreme Court imposed. On your theories with respect to the statute of limitations, it seems to me, maybe I haven't done the arithmetic correctly, but you seem, whether we're running from the Indiana Supreme Court's denial of rehearing or the trial court's re-sentence order, there's time for further review, correct? That counts? I agree with that. And doesn't that make his petition timely under either of those approaches? Yes, under either of those approaches. If the Indiana Supreme Court's decision disturbed the finality of the conviction and gave him a new statute of limitations period, then his petition would have been timely. Okay. Thank you. But to treat that as a new direct appeal ignores that he received relief on post-conviction review, not on direct appeal. And so in no other case has a petitioner who received relief in a post-conviction proceeding and actually received the relief, not a new direct appeal, but actually received the relief on post-conviction restart at the clock. And he cites to no case in which that happened. Under your theory, could the statute of limitations have run out if the state trial court, after remand from the Indiana Supreme Court, had taken, let's say, another few months before it actually entered the new sentencing order? Under your theory, would the statute of limitations have run out before the re-sentencing was entered? So he had 90 days left on the statute of limitations. So suppose it took the trial judge 120 days to enter the new sentencing order? Yes, potentially. I think so because there would be nothing to stop him from filing his habeas petition because he was challenging his custody. He met the custody requirement. He's in custody due to a state court judgment. So he could have filed his habeas petition at any time. He didn't need to wait for the trial court to do that. In such a situation, your office would welcome a habeas petition before the state trial court has carried out the mandate of the Indiana Supreme Court? Well I think if the trial court never did anything, then it would be I think that that would work itself out due to the timing. I mean, usually what would happen is if he filed a habeas petition, we would be on the trial court to do something so that that was not an issue and then move forward. So suppose we disagree with you on your statute of limitations argument. Could you focus in on this question about whether the reasoning of Magwood and the focus on a judgment in essence calls for a clean slate in de novo review? And again, my first argument would be that if he succeeds on that, he's procedurally defaulted because he did not go through one full round of state court review. Let's assume that would have been clearly futile. And your office would have treated it as frivolous. Ignoring that, I don't see how, because the claim was decided, there was no new claim by the trial court's judgment. He's arguing the same claims he argued before the Indiana Supreme Court. And I'm not aware of any case that would support the fact that a claim raised before the state court that the court decided on the merits has no bearing on federal review of what the state court judgment is. The state court judgment here that he's under includes the Indiana Supreme Court saying his sentence at 181 years or 100 years does not violate the Eighth Amendment. And so to say that he can now raise an Eighth Amendment claim, raising the exact same claim he raised before the Indiana Supreme Court, and say they haven't reviewed it because they didn't review it after the trial court complied with their decision. The decision to enter the 100 years was done by the Indiana Supreme Court, not by the trial court. The trial court had no discretion, did nothing other than change the sentencing order to reflect what the Indiana Supreme Court did. If the Indiana Supreme Court, you all have presented quite a puzzle to us, if the Indiana Supreme Court had done what it usually does and remanded to the Indiana Court of Appeals for a 7B analysis, and it did so, would that be a new judgment? And I guess it would be. Well, if the, I don't think so, I mean definitely not, if the Indiana Court of Appeals did not review as, I mean didn't adjust the sentence downward. If they did 7B review and just kept the same sentence. If they... If they got the implicit message that they ought to reduce it? I don't think that there would be any difference between the Court of Appeals doing it and the Supreme Court doing the revision. Because again, this is, the 7B review is completely judicial review of what the court says is a constitutional legal sentence. So before the court does 7B review, it reviews to see whether there's any legal error in the trial court's judgment or any constitutional error. And they say despite the fact that the sentence is legally and constitutionally sound, as we're using our Indiana constitutional power to review and revise sentences and adjust outliers. When we look out over all the sentences that are given in Indiana, we just think that this one is an outlier and so we're going to reduce it. Are you aware of any other state procedures like this 7B mechanism and how they might interrelate with 2254D? I don't. I don't. But I think it's telling. The state would not be arguing that this claim was not available for federal review because it had not been presented to the state court because of the trial court's action here. If he challenges what the Indiana Supreme Court did, which we think is proper, and that's what we argued in our brief, it's available. It's fully exhausted, fairly presented to the Indiana Supreme Court, and they decided that the Miller line of cases does not apply to term of year sentences and that the sentence that they gave him, 100 years, is not a de facto life sentence. They explicitly said that. And so he just can't get around those two holdings that he even admits are not an unreasonable application of clearly established federal law or contrary to clearly established federal law. So he's gotten the review that he's entitled to. The state court reviewed his claims and what's available now, if he wants it but he doesn't, is for this court to review what the state court did. He wants to ignore that and just move and say no one has reviewed this. But of course, the Indiana Supreme Court chose the sentence. It didn't, it's just odd to say what kind of procedure he would have other than rehearing, which he did. But after rehearing, to then go back to the Indiana Supreme Court and say, I want you to look at this sentence again, it would all be res judicata because they've already decided those claims. He can't present the claims again. I think, just to point out, one of the problems with figuring out de facto life sentences, I think, is credit time. He says right now that his earliest release date is when he's 66. But of course, we don't know if he'll get educational credit time, which could knock down his sentence by another four years. And also the Indiana legislature has just recently passed a law that allows juvenile murderers to request modification after they've served 20 actual years. So we just have no idea right now what his prison term will look like because we don't know what the future holds. And that's, I think, a little bit of a difficulty when you're looking at non-mandatory life sentences and you're trying to look at a term of years and how long a particular individual will be in prison. We just don't know because we don't know how the credit time will fall out or change or how the statutes will change. Do pardon and clemency factor in? It traditionally hasn't, although, I mean, I think if you look at the Indiana Supreme Court's decision in Jones, it suggests that even mandatory life thought parole de jure sentences also have that available to, inmates have that available to them, and so the court's not as concerned about that they're left without any remedy. And that's in actual mandatory life without parole sentences. Because the Supreme Court reasonably applied federal law in deciding Wilson's claims, this court should affirm the district court. Thank you. Thank you very much, Mr. Cobey. Mr. Miller, we'll move back to you. Let me start you with this 7B question. Are you aware of any other state procedures or mechanisms similar to this that might intersect with 2054D? Your Honor, not exactly. So there is the recent statute passed by the Indiana legislature that does allow for sentence modification after 20 years. The issue with that, though, is there's another Indiana statute that says trial judges cannot go below the statutory mandatory minimum. And so what we would have in this case is the best case scenario is getting reduced from 100 to 90 years, even with that new statute that's been passed, so we're not aware of anything that would actually make a difference to reduce the sentence to less than a de facto life sentence. And I want to address that this is a procedurally confusing case. This is not the standard procedure, and that matters. What the Indiana Supreme Court did prevented us both from seeking transfer after either demanding to the Court of Appeals or seeking certiorari in the United States Supreme Court. What they did is they did solve the constitutional issues with that particular judgment by finding his counsel ineffective. So we didn't have a cert petition out of it because we prevailed in the Indiana Supreme Court, empirically prevailed, but we did prevail. We couldn't seek cert. What we could have done, though, is because the Eighth Amendment discussion in the Indiana  we prevail because of ineffective assistance of counsel. The denial of the Eighth Amendment claim is dictum on that point. So what we could have done, again, had they remanded to the Court of Appeals as a standard procedure, could have argued the 7B relief there. We go back to the Indiana Supreme Court and make our argument again on this reduced sentence, and if that failed, seek certiorari. But we didn't have those options. There was a procedurally confusing decision made here to simply do the 7B inside of the own post-conviction review. And by sending it back down to the trial court, where the trial court instituted a new judgment, the judgment is the paper authorizing the custody. This is a different judgment than the constitutionally defective one that imposed the 180-year sentence. Again, I think Magwood is important to consider with the fair warning claim. It's not a custody-focused statute. Magwood explicitly said 2254, it's not focused on custody. It's focused on the judgment. And Magwood could not have brought his fair warning claim, if they had considered that to be tied to the current judgment, to be at all tied to the previous judgment. He would have not have been permitted to, it would have been defaulted, but the Supreme Court of the United States said, because this is a new judgment, even though you could have brought this claim before, but didn't, you can bring it now, and that same logic tracks here. He has not heard this claim brought on the 100-year judgment, and there are substantive differences between them. And we tried to bring this through the Indiana courts, they told us we weren't allowed to. So exhaustion is satisfied. As to the argument about procedural default, there's maybe, potentially, an argument for that on fair presentation, but the state hasn't made it at any point in the briefing. Fair presentation can be waived, but we did satisfy exhaustion's requirement. Then finally, as to the difficulties in assessing where the line is in a de facto sentence, we do agree with the state that it can be difficult, but what's not difficult is knowing it's highly likely that Donnell will die in prison when he can't be released until 16 years past his life expectancy as a juvenile prisoner. It's highly likely that he dies in prison when the United States Sentencing Commission has said, 470 months for all practical realities, that is a life sentence. And that decision need not even be addressed by this court, because the only argument the state has made, either in the district court or in the Seventh Circuit, as to the de facto life sentence, is that it's the product of a discretionary system. They never actually challenged in any meaningful capacity, aside from just asserting that it's not a life sentence, they've never actually explained why it's not. That argument is waived. And so this court can simply hold that because of the waiver, this amounts to a de facto life sentence and issue a conditional writ instructing the state to either vacate the criminal gang enhancement, which would reduce his sentence down to 50 years, he has a chance to get out of prison at that point. There's no guarantee. If he doesn't behave himself in prison, he will not get out. But if he shows that reform by vacating the criminal gang enhancement, he has a chance. And that's a really free request. Barring any further questions, I would sit down. Thank you, Mr. Miller. Thank you, Mr. Osberg. Thanks to the Federal Habeas Project for your work on the case. Thank you, Mr. Kobe. The case will be taken under advisement.